IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06cr370

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| JOSE CASTENEDA-ARRELLANO ) | |
| _____ ) | |

**THIS MATTER** is before the Court upon motion of the defendant, Jose Cateneda-Arrellano, to suppress the evidence of a handgun seized during a search of his residence, and to suppress incriminating statements he made to Special Agent Ed Brigham on August 17, 2006, on the grounds that his Fourth and Fifth Amendment rights were violated. (Doc. No. 19). On January 3, 2007, the Court held a suppression hearing and took the motion under advisement. Based upon the record before it, the Court finds that the agents lawfully approached the defendant's apartment, questioned a co-occupant, Eliseo Casteneda-Arrellano, about his alien status, properly gained consent from him to enter and perform an investigatory search, and additionally gained consent to search from the defendant himself, resulting in the finding of the handgun in question. The Court also finds that the defendant's spontaneous utterance and later statements pertaining to his ownership of the gun were made voluntarily. For the following reasons, the defendant's motion will be **DENIED**.

**FACTUAL FINDINGS**

On or about August 17, 2006, based upon a tip received from another law enforcement agency, Immigration and Customs Enforcement ("ICE") special agents conducted an investigation into alleged drug trafficking activities involving alleged illegal aliens living at 6403-B Four Winds

1

Drive, Charlotte, North Carolina. That morning, at approximately 10:45 a.m., ICE Special Agents Todd Elmore and Ed Brigham saw a man, later identified as the defendant's brother Eliseo Castaneda-Arrellano, near the back door of the apartment. Eliseo informed the agents that he lived in the apartment in question. Special Agent Brigham, a Spanish speaker, asked this man about his immigration status, to which he admitted being illegally in the United States. Special Agent Brigham then asked Eliseo for permission to search the residence, to which Eliseo consented.

After entering the apartment, the agents encountered the defendant, Jose Castaneda-Arrellano. Special Agent Brigham received consent to search the apartment from the defendant. Using the Spanish language, Special Agent Brigham asked the defendant if he was an illegal alien, to which Jose answered in the affirmative. At that time, based on the immigration status of both the defendant and his brother Eliseo, the agents detained the two men for further administrative immigration proceedings.

While Special Agent Brigham continued to talk with the individuals about their status, Special Agent Elmore and Special Agent Joel Roundtree searched the apartment and found a 9 mm Ruger handgun on a shelf in the closet of a rear upstairs bedroom. The gun contained a loaded ammunition magazine, and a second loaded magazine was located next to the weapon. A receipt for a mattress in the name of "Ricardo Castaneda" was found near the gun. The agents also found a fraudulent Alien Registration Receipt Card in a blue suitcase located on the floor of the front upstairs bedroom. This card was in the name of Eliseo Castaneda-Arrellano. A subsequent search of ICE databases determined that this document had been fraudulently produced and belonged to another individual named Asenaida Escober Pacheco.

Special Agent Brigham then inquired about whether other persons lived at the apartment.

Eliseo informed him that their brother Ricardo Castaneda-Arrellano also lived in the apartment. At approximately 11:25 a.m., this brother arrived at the apartment and Special Agent Brigham asked him if he was an illegal alien. Ricardo admitted that he was. While speaking to Ricardo in a separate room from the defendant, Special Agent Brigham asked him about the handgun found in an upstairs bedroom. Before Ricardo could answer, the defendant yelled from the other room that the handgun belonged to him.

The ICE special agents then transported the three Castaneda-Arrellano brothers to the ICE office in Charlotte. Searches of ICE databases revealed that all of them were illegally in the United States. Using the Spanish language, Special Agent Brigham informed the defendant of his *Miranda* rights and, at approximately 2:00 p.m., the defendant signed a written waiver form (in the Spanish language) and agreed to answer the agents' questions. He signed the form in the name of Jesus Carrillo-Castaneda, the name that appeared on the fraudulent Mexican documents that he possessed. However, a subsequent search of ICE databases revealed his true identity. He also signed a form informing the agents that he did not want the Mexican consulate to be contacted about his arrest.

After signing the *Miranda* rights waiver form, the defendant admitted that the 9 mm Ruger found in the apartment belonged to him, and that he purchased the gun for $100 from an unidentified black male in July 2006 in order to protect himself. He also admitted that, while using the alias Jesus Carrillo-Castaneda, he had been arrested by immigration officials in 2002 and had returned to the United States in 2006.

## LEGAL FRAMEWORK

1.     ICE Agents Lawfully Interrogated Aliens about Their Status and Performed a Lawful Arrest

Pursuant to 8 U.S.C. § 1357(a)(1), a duly authorized immigration officer "shall have power without a warrant - to interrogate an alien or person believed to be an alien as to his or her right to be or to remain in the United States." Here, the agents received a tip from another law enforcement agency that the occupants of this apartment were illegally in the United States and involved in drug trafficking. Theagents did not need a warrant when they questioned the defendant's brother Eliseo and later the defendant himself about their citizenship status.

Furthermore, 8 U.S.C. § 1357(a)(2) provides that an authorized immigration officer can, without a warrant, "arrest any alien in the United States, if he has reason to believed that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . ." Since the defendant and his brother Eliseo admitted they were illegally in the United States, the agents lawfully arrested them.

2.  The Agents Lawfully Entered the Apartment Based on Consent of Co-Occupant

    A. Knock and Talk

The agents essentially performed a "knock and talk" when they approached the rear of the apartment as Eliseo exited the rear door and briefly questioned him. During this conversation, Eliso admitted his status as an illegal alien and gave the agents consent to enter and search the apartment.

A "knock and talk" is a consensual encounter and therefore does not violate the Fourth Amendment, even absent reasonable suspicion. United States v. Cruz-Mendez, 467 F.3d 1260, 1264 (10th Cir. 2006); see also Rogers v. Pendleton, 249 F.3d 279, 289 (4th 2001) ("[j]ust as private citizens may approach a home, absent contrary instructions from the owner, to knock on a door, so may the police approach without probable cause, a warrant, or exigency."); see also United States v. Thomas, F.3d 274, 277 (6th Cir. 2005) ("A number of courts . . . have recognized 'knock and talk'

4

consensual encounters as a legitimate investigative technique at the home of a suspect or an individual with information about an investigation."); see also United States v. Cormier, 220 F. 3d 1103, 1109 (9th Cir. 2000) ("[N]o suspicion needed to be shown in order to justify the 'knock and talk'"); see also Accordingly, the agents had the right to approach the apartment and to ask Eliseo for permission to enter and search the apartment.

B. Consent to Enter and Search

At the suppression hearing on January 17, 2006, both Special Agent Todd Elmore and Special Agent Ed Brigham testified that Eliseo met them outside of the residence. Both testified that Special Agent Brigham questioned Eliseo in Spanish about whether he was illegally in the United States, and whether the agents could search his apartment. The agents both testified that Eliseo answered both questions in the affirmative. Additionally, both agents testified that the defendant gave consent in Spanish to Special Agent Brigham to search the apartment.

Eliseo, on the other hand, testified that the agents questioned him about the presence of drugs or weapons in the residence, to which he answered in the negative, then asked him if he was illegally in the United States, to which he answered in the affirmative. He then testified that the agents entered the apartment and began searching without consent and eventually found the gun in the upstairs bedroom.

The Court listened to the witnesses' testimony and observed their demeanor, and finds the agents' testimony credible. Special Agents Elmore and Brigham are experienced agents. Each agent's testimony was internally consistent and corroborated by the other's testimony.

Eliseo's testimony was not credible. He appeared to be trying to help his brother. Contrary to the previous testimony of the agents, Eliseo was uncertain. When asked whether the agents asked

5

him for consent to search the apartment, he answered "No, I don't remember. I mean, I just told them that I was illegal and they just entered." (Doc. No. 26: TR p. 67, lines 19-20.) On cross-examination, Eliseo's confusion is apparent from the following exchange:

> Q. "Mr. Castaneda-Arrellano, you say you don't remember if the agents asked for consent to search."
> A. (Interpreter:) "No, I don't remember. Everything was fast. I just said that I was illegal."
> Q. So it's possible they could have asked for consent, isn't it?
> A. (Interpreter:) No.
> Q. It's not possible?
> A. (Interpreter:) That's what I understood.

(Id. at p. 71, lines 16-24). The Court finds the agent's contrary testimony credible, and accordingly finds that Eliseo gave consent to enter, and that both Eliseo and the defendant gave consent to perform an investigatory search of the apartment.

Search pursuant to voluntary consent is an exception to the Fourth Amendment's warrant requirement. United States v. Hylton, 349 F.3d 781, 785 (4th Cir. 2003) (citing Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001) and Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). "Moreover, valid consent may be given by any one of the co-habitants of a premises, even though no other co-habitant has consented. Id. Because Eliseo was a co-habitant he could and did give consent for the agents to enter and search the apartment, which was followed up by the defendant's own consent to search. Therefore, the suppression of the gun found during the search is denied.

3. Defendant Volunteered Statement About Gun Ownership

Special Agent Brigham spoke to Ricardo in the kitchen and asked him if the handgun found in the bedroom was his. Before Ricardo could answer, the defendant interjected from the living room that the firearm belonged to him.

The Fourth Circuit has held that statements volunteered by a defendant during a search are admissible without Miranda warnings. United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993). Here, even if he was in custody at the time he made the statement, it was not in response to his own interrogation. Therefore, the statement made by the defendant is admissible without *Miranda* warnings.[1]

## CONCLUSION

The Court finds that the agents lawfully approached the defendant's apartment and questioned the occupants about their status, and also lawfully gained their consent to enter and perform an investigatory search, which resulted in the finding of the handgun in question. The Court also finds that the defendant's spontaneous statement pertaining to his ownership of the handgun found was made voluntarily and should not be suppressed.

IT IS, THEREFORE, **ORDERED** that the defendant's motion to suppress (Doc No. 19) is **DENIED**.

Signed: February 1, 2007

Robert J. Conrad, Jr.
Chief United States District Judge

---

[1] The defendant does not contest the statements made after being informed of his Miranda rights at the ICE office.